Filed 2/20/14  P. .v Torres CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HECTOR HUGO TORRES,<br><br>Defendant and Appellant. | F065523<br><br>(Super. Ct. No. BF139470A)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Law Offices of Benjamin R. Greene and Thomas W. Casa for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, J., Poochigian, Acting P.J. and Franson, J.

Defendant Hector Hugo Torres was convicted by a jury of felony unlawful sexual intercourse with a minor (Pen. Code, § 261.5, subd. (c))[1] based on consensual sexual intercourse with his first cousin.[2] The trial court sentenced him to three years' felony probation with one year in county jail and ordered him to register as a sex offender. On appeal, defendant contends the trial court abused its discretion by ordering him to register as a sex offender. We will reverse the registration order and remand for reconsideration.

## BACKGROUND

In the summer of 2009, the cousin's family visited defendant's family in Texas. The cousin was 15 years old. Defendant was about seven years older. They had not seen each other in years and did not really know each other. Defendant had a girlfriend and two children, and they lived together with defendant's mother. After two weeks, the cousin's family left, but the cousin remained with defendant's family for the rest of the summer. A few days after her family left, the cousin went with defendant to a park. He told her he liked her and was attracted to her. He kissed her. She was shocked and did not know what to say. When they went back to the house, he told her to act normally so no one would notice what had happened. The next morning, he came into her room and woke her up. He took off her pants, pulled down his pants, and put his penis in her vagina. They were quiet, but when they thought they heard someone, he left the room and went into the living room with his mother. The cousin was shocked and nervous, but she acted as though nothing had happened.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] Section 261.5, subdivision (c) provides: "Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170."

Defendant got into an argument with his girlfriend, and she left the house with the children. Defendant then told the cousin he was attracted to her, liked her, did not see her as a cousin, and wanted to be with her. He told her she could not tell anyone because he could go to prison. She promised him she would not say anything to anyone. During the course of the summer, they had sexual intercourse at night while his girlfriend was away from the house or in the shower. The cousin became attached to defendant and fell in love with him. At the end of the summer, the cousin went home to Bakersfield. She told no one what had happened.

Defendant and the cousin talked or sent messages every day. He told her he loved her and promised they would run away together someday. He told her he did not love his girlfriend, although he later told her he was going to marry the girlfriend. The cousin was sad and frustrated. She was upset that she was just a side interest and she wondered why defendant would marry the girlfriend when he did not love her. That year, he and the girlfriend got married.

The next summer, defendant asked the cousin to come alone to Alabama, where he and his family had moved. He wanted her to be there with him. She agreed, and throughout that summer, they had sexual intercourse when the wife was not around. The cousin loved and trusted defendant. He was her first love. She continued to believe his promises that he would leave his wife and run away with her. At the end of the summer, she went home to Bakersfield. She still told no one because she loved him and did not want anything to happen to him. They continued to speak or send messages every day. He told her that he wanted to be with her, that he loved her, and that if she cared about him she would not say anything to anyone.

The next summer, the cousin did not want to visit defendant, so he and his family came to Bakersfield. They stayed at the cousin's house for two weeks. When they all went to Las Vegas, defendant and the cousin were able to sneak away to have sexual intercourse when the others were in a casino. After they returned to Bakersfield, they

3.

were together one more time.  Defendant served alcohol to make everyone sleepy so they could be alone.  Defendant went back to the cousin's room and they had sexual intercourse.**3**

After defendant and his family left, the cousin began having mixed emotions about being with defendant.  She loved him, but sometimes she was mad.  She started to understand that their relationship was not going anywhere.  She decided she did not want to continue the relationship and she did not want to continue keeping the secret.  She did not know what to do, so she told the truth to a relative, who then told the cousin's mother.  The mother called the sheriff.  An officer recorded a pretext call from the cousin to defendant in which he admitted having sex with her.**4**

### DISCUSSION

Lifetime registration as a sex offender is mandatory for persons convicted of certain crimes.  (§ 290.)  "Its purpose is to assure that persons convicted of offenses requiring registration "'"'shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.'"'" [Citation.]"  (*Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 78.)  For persons convicted of crimes not listed in section 290, the trial court has *discretion* to impose lifetime registration pursuant to section 290.006, which provides:  "Any person ordered by any court to register pursuant to the [Sex Offender Registration] Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification.  The court shall state on the record the reasons for its findings and the reasons for requiring registration."

---

**3**    It is this offense, committed in California, that was the basis of the sole count in this case.

**4**    The call was played for the jury.

4.

"Since the purpose of sex offender registration is to keep track of persons likely to reoffend, one of the 'reasons for requiring registration' under section 290.006 must be that the defendant is likely to commit similar offenses—offenses like those listed in section 290—in the future. [Citation.] [¶] The registerable crimes listed in section 290, subdivision (c) may be characterized generally as sexual offenses committed by means of force or violence, violent offenses committed for sexual purposes, sexual offenses committed against minors, or offenses that involve the sexual exploitation of minors." (*Lewis v. Superior Court, supra,* at pp. 78-79, fn. omitted.) "'In order to make a discretionary determination as to whether or not to require registration [under section 290.006], the trial court logically should be able to consider all relevant information available to it at the time it makes its decision ….' [Citation.]" (*Id.* at p. 79.)

In *People v. Hofsheier* (2006) 37 Cal.4th 1185, the Supreme Court held that to impose a discretionary registration requirement, the trial court "must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender. By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Id.* at p. 1197.)

In ordering defendant to register pursuant to section 290.006, the trial court stated only the following:

> "In addition, the defendant will be ordered—there is discretion of the Court, but he is ordered to register as a sex offender pursuant to Penal Code Section 290 in this matter."[5]

---

[5] As defendant points out, the trial court mentioned section 290 here, but the court's recognition of its discretion demonstrates it understood it was ordering registration under

Defendant contends the trial court erred in requiring him to register as a sex offender under section 290 because his offense was not subject to mandatory registration. He further argues that under section 290.006, the trial court failed to state its reasons for the order.

The People agree that the court failed to state its reasons on the record and concede that remand is appropriate for the court to do so. The People note the probation report did not recommend registration, and the probation department assessed defendant as being a low risk for sexual reoffending. We will reverse and remand.

## DISPOSITION

The order to register as a sex offender is reversed and the matter remanded for the trial court to reconsider the registration order and state its reasons if it again decides to order registration. In all other respects, the judgment is affirmed.

---

section 290.006, not section 290. Similarly, defense counsel argued before sentencing that defendant's behavior did not support registration, but counsel urged the court to show mercy by reducing the offense to a misdemeanor and not ordering registration. Again, we believe everyone understood that any registration order was discretionary and would be made pursuant to section 290.006.