Filed 3/7/24  P. v. Sanchez CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT SANCHEZ,<br><br>Defendant and Appellant. | F085926<br><br>(Super. Ct. No. 22CRST000043)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

Defendant Robert Sanchez appeals from the court's order denying his 2022 petition filed pursuant to Penal Code section 290.5 to terminate his sex offender

registration requirement, which arose from a 1986 conviction for lewd and lascivious acts with a child under the age of 14. (Undesignated statutory references are to the Penal Code.) At the hearing on the petition, the parties agreed the evidence showed, following his 1986 conviction defendant was repeatedly arrested for similar conduct, including as recently as in 2018, but none of these charges resulted in convictions. The court denied defendant's petition based on its safety concerns in light of the number of subsequent arrests for similar conduct, and it required defendant to continue to register for a period of two years before he could again petition for termination of the registration requirement.

On appeal, defendant argues the trial court abused its discretion in concluding community safety would be appreciably increased by requiring defendant to continue to register for two additional years. Rather, the prosecution failed to establish terminating the registration requirement would raise the threat to society because he might reoffend.

We affirm the court's order denying defendant's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1986, defendant was convicted of committing a lewd or lascivious act upon a child who is under 14 years old, a violation of section 288, subdivision (a), in case No. 0334416-5, which required him to register as a sex offender in Fresno County. On June 1, 2022, defendant petitioned the superior court to terminate his sex offender registration requirement arising from his 1986 conviction pursuant to section 290.5. He asserted he was designated as "Tier 2," had registered for at least 20 years, and had not previously filed a section 290.5 petition. Accordingly, he believed he had "met the requirements to register for the time period required by [his] tier designation as determined by the Department of Justice." Thereafter, the Fresno County Sheriff's Office filed a proof of defendant's registration requirement and tier level as "Tier 2— Adult." It also filed a "Petition Checklist" in which it represented that defendant did not have any pending charges against him that could extend the time to complete the registration requirements of his tier or change his tier status (§ 290.5, subd. (a)(2)); he

2.

was not on parole, probation or supervised release (§ 290.5, subd. (a)(2)); and he was not in custody (§ 290.5, subd. (a)(2)). The Fresno County District Attorney's Office filed an objection to the granting of the petition on the grounds "[c]ommunity safety would be significantly enhanced by the petitioner's continued registration."

The court held a hearing on defendant's petition on December 2, 2022. During the hearing, the parties agreed defendant had suffered an arrest for three counts of similar conduct in 1992. However, he was acquitted of the charges in 1993. In 1994, 2004, 2012, and 2018, defendant also suffered additional arrests, but the charges were dismissed. The prosecutor affirmed the charges that were subsequently dismissed were all "288 type charges," and expressed a concern that defendant was still "getting those arrests" in 2012 and 2018, noting the 2012 arrest was for the "same type of charges, 288" and the 2018 arrest was for violations of sections 647.6 (annoying or molesting a child under 18) and 288. The prosecutor explained, "at the time of the original conviction, there w[ere] two separate reporting allegations" and "one of the cases went forward" with a nine-year-old victim. "There was also a long time with another victim [who] said that there w[ere] multiple events, penetration events," but defendant was not convicted of that charge. "So similar conduct but it was not pled and proven."

The court told defendant, though "those aren't convictions, … it is concerning … that you have been arrested multiple times since having to register for conduct that's similar to why you have to register." The court noted, "[T]here's a lot of different reasons why those cases end up getting dismissed. Sometimes it's because people don't cooperate with them. Sometimes it's because there is just nothing to investigate. But having one of those happen while you are registering is concerning, but … not unduly so. Having three, four, or five of them, it starts causing concerns." The court further stated, "This is one of those rare type of procedures where it doesn't necessarily have to be a conviction for the Court to have a concern raised."

3.

Defense counsel responded, "[T]he nature of having people register as sex offenders" and having that information "publicly available on a website" is that neighbors "don't like it," and allegations are taken "more seriously than they normally would by police." He asserted, "Ultimately, none of those ended up in a conviction," and "[w]e don't have the facts of those before us." He argued, "It is the People's burden to show that registration will assist in future crime prevention," and there has not been a crime sustained since defendant's conviction. In response to questioning by the court, defendant represented that he was 74 years old at the time of the hearing.

The court initially stated it was going to grant the petition, but the prosecutor then explained the subsequent arrests, including those in 2004, 2012, and two in 2018, were all for section 288 type charges. The court asked defendant to "shed light" on those arrests, and defendant stated he was "just there at the wrong time" and they were "false accusations." The court asked the prosecutor to pull the file regarding the 2018 arrests in Fresno County to determine "what that was all about," but the district attorney was unable to provide much information. The court stated it wanted "to know a little bit of background on these cases and why they were just arrests but weren't sustained, whether it was because the victim couldn't be found." The court asserted it was "factoring in the fact that these are arrests, not convictions." But, it explained, defendant was registering for "a serious sex crime" and had "been arrested for ongoing serious sex crimes about every two to three years." Accordingly, the court continued the matter to permit the parties to look into the circumstances of defendant's prior arrests.

The court held another hearing on February 24, 2023. At that hearing, the court explained it was unaware of any convictions defendant had sustained, but it had "significant concerns about the fact that there were multiple arrests for same or similar conduct." The People stated they confirmed "at some point cases [were] filed," but there was no further information as to why they were not pursued. Defense counsel again asserted it was the People's burden and they failed to meet it; so, "the petition must be

4.

granted." The court stated defendant's "multiple arrests for similar offenses" provides a basis for a "finding that he poses an ongoing risk even if they're not convictions, given that conduct even if it doesn't result in a conviction."

Defense counsel agreed the court records showed defendant had been arrested, but he argued the arrests should not be held against defendant, asserting there is "such a low standard for initiation of a case." He also asserted registration was not "protecting the public … in any way, shape or form." He again argued the People had not met their burden as they had not provided any information.

The court denied defendant's petition to terminate his adult sex offender registration requirement because it found "[c]ommunity safety would be significantly enhanced by the petitioner's continued registration." It found the "multiple arrests while registering for similar alleged conduct that he was registering for … provide[d] a basis … to find that it will not be appropriate to terminate registration." Rather, defendant "poses an ongoing risk given the fact that, repeatedly, he's being arrested for same or similar conduct." The court reasoned, "somebody can be arrested one time and it's just bad luck if somebody is arrested three, four times for a similar type of charge; that's enough for this Court to find that there's a reason to have concerns about public safety going forward." The court ruled defendant could not file another petition for termination for two years in order to see if he was arrested again for similar conduct.

## DISCUSSION

### The Court Did Not Err in Denying Defendant's Section 290.5 Petition

Defendant argues the trial court erred in denying his petition to terminate his sex offender registration requirement pursuant to section 290.5 from his 1986 conviction in case No. 0334416-5. We disagree.

## A. Standard of Review and Applicable Law

California law requires persons convicted of specified sex crimes against a child, including violations of section 288, to register as a sex offender while they live, work, or attend school in California.  (§ 290, subds. (b), (c); *People v. Mosley* (2015) 60 Cal.4th 1044, 1048.)  "For many years, California took a one-size-fits all approach to sex offender registration:  If registration was required, registration was always for life.  (Stats. 1947, ch. 1124, § 1, p. 2562.)" (*People v. Franco* (2024) 99 Cal.App.5th 184, 190.) However, commencing January 1, 2021, Senate Bill No. 384 (2017–2018 Reg. Sess.) restructured the sex offender registration requirement, establishing three tiers of registration for sex offenders, primarily based on the offense of conviction, for periods of at least 10 years (tier one), at least 20 years (tier two), and life (tier three).  (Stats. 2017, ch. 541, § 2.5; see § 290, subd. (d).) Defendant is a tier two sex offender subject to the 20-year registration requirement.  (§ 290, subd. (d)(2); see § 290.5, subds. (a), (b).) Commencing July 1, 2021, Senate Bill 384 also established procedures for a person to seek termination from the sex offender registry if the person meets certain criteria, including completion of the mandated minimum registration period.  (§ 290.5, subds. (a)– (c); *People v. Thai* (2023) 90 Cal.App.5th 427, 432.)  Pursuant to the statute, the prosecution may request a hearing and present evidence to establish "community safety would be significantly enhanced by requiring continued registration."  (§ 290.5, subd. (a)(2), (3).)

Section 290.5 does not define the phrase "community safety would be significantly enhanced."  (§ 290.5, subd. (a)(2); *People v. Thai*, *supra*, 90 Cal.App.5th at p. 432.)  The purpose of section 290 is to ensure police can surveil sex offenders at all times because they pose a "'"""continuing threat to society."'""" (*People v. Sorden* (2005) 36 Cal.4th 65, 73.)  In the absence of a statutory definition, words should be given their usual and ordinary meanings.  (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 376.) "'Significant' is defined as 'having or likely to have influence or effect:  deserving to be

considered:  important, weighty, notable.'  (Webster's 3d New Internat. Dict. (1981) p. 2116, col. 2, capitalization omitted.)"  (*People v. Thai*, *supra*, at p. 432.)  "'Enhanced' is defined as to raise or lift.  ([Webster's, *supra*,] p. 753, col. 3.)"  (*Thai*, at p. 432.)  Thus, the prosecution must produce evidence establishing that requiring continued registration appreciably increased society's safety.  (*Ibid*.)

In making this determination, the trial court must consider:  "the nature and facts of the registerable offense; the age and number of victims; whether any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); criminal and relevant noncriminal behavior before and after conviction for the registerable offense; the time period during which the person has not reoffended; successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available."  (§ 290.5, subd. (a)(3); *People v. Thai*, *supra*, 90 Cal.App.5th at pp. 432–433.)  The parties may submit, and the court may base its decision upon, affidavits, declarations, police reports or any other "reliable, material, and relevant" evidence.  (§ 290.5, subd. (a)(3).)  If the court denies the petition, it must set the time period—one to five years, after which the petitioner can repetition for termination—and state its reasons.  (§ 290.5, subd. (a)(4).)

An appellate court reviews the trial court's ruling on a petition for termination from the sex offender registry for abuse of discretion.  (*Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 79; *People v. Thai*, *supra*, 90 Cal.App.5th at p. 433; accord, *People v. Franco*, *supra*, 99 Cal.App.5th at p. 192 [explaining whether defendant's "'continued registration appreciably increase[s] society's safety'" after weighing statutorily enumerated factors is a "predominantly factual inquiry"].)  To establish an abuse of discretion, a defendant must demonstrate the trial court's decision fell outside the bounds

of reason, i.e., was arbitrary, capricious, or patently absurd.  (*People v. Johnson* (2022) 12 Cal.5th 544, 605–606.)

"'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.'"  (*People v. Thai*, *supra*, 90 Cal.App.5th at p. 433; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.)  A trial court abuses its discretion when its factual findings are not supported by the evidence, or its decision is based on an incorrect legal standard.  (*People v. Thai*, *supra*, at p. 433.)

### B.      Analysis

Defendant asserts the prosecution failed to meet its burden to present "reasonable, credible, and solid evidence" that "community safety would be significantly enhanced" by requiring him to register for an additional two years, noting he was 74 at the time of the hearing.  He argues he had not sustained a conviction for a sex offense or failed to register as a sex offender since he was convicted of the offenses that required him to register as a sex offender.  Accordingly, the court abused its discretion in denying his petition and its order should be reversed.  The People respond that defendant's "pattern of arrests for lewd and lascivious conduct inherently suggests that the reason for the dismissals here was not because [defendant] did not engage in any of the sexual misconduct."  They contend the court appropriately considered defendant's pattern of arrests here, as a sentencing court may consider arrests that do not result in conviction in making sentencing decisions.  We agree with the People; we cannot conclude the court abused its broad discretion in concluding community safety would be significantly enhanced by requiring defendant to continue registering as a sex offender for at least two

more years to permit additional time to assess whether defendant remains arrest and conviction free.

Our state Supreme Court has acknowledged that, "[w]hile a record of arrests not resulting in conviction is generally inadmissible at trial, it may serve significant functions in both pretrial and post-trial proceedings." (*Loder v. Municipal Court* (1976) 17 Cal.3d 859, 866.)  The *Loder* court noted the particular value of an arrest record as an investigative tool for the discovery of further evidence where the "prior arrest is not an isolated event but one of a series of arrests of the same individual on the same or related charges," especially "when the crime in question is typically subject to recidivism, such as … child molesting …." (*Id*. at p. 865.)  "In these circumstances a pattern may emerge … which has independent significance as a basis for suspecting the arrestee if the crime is committed again." (*Id*. at pp. 865–866.)  The *Loder* court also explained an arrest record may be considered by the court in conjunction with all other relevant information in deciding whether to release a defendant on recognizance or in fixing the appropriate amount of bail. (*Id*. at p. 867.)  It further noted that a court may also take a defendant's arrest record into account in determining whether and upon what conditions to grant probation or when to release him on parole.  (*Id*. at p. 868.)  Notably, similar to an assessment as to whether a registration requirement should be terminated under section 290.5, the relevant inquiry with regard to whether to permit release of an individual from pretrial detention or on parole relates to an assessment of the risk the individual poses to public safety.  (See Cal. Const., art. I, § 28, subd. (f)(3) ["Public safety and the safety of the victim shall be the primary considerations" in setting, reducing or denying bail]; *In re Lawrence* (2008) 44 Cal.4th 1181, 1205 ["the Penal Code and corresponding regulations establish that the fundamental consideration in parole decisions is public safety"]; see also *In re Humphrey* (2021) 11 Cal.5th 135, 143 [noting in certain circumstances "the need to protect community safety may conflict with the arrestee's fundamental right to pretrial liberty"].)

9.

Here, the People asserted, and the defense agreed, defendant had suffered numerous arrests for conduct similar to that for which he sustained the 1986 conviction requiring him to register as a sex offender. Indeed, the parties agreed defendant was arrested as recently as 2018 on similar charges, which the court confirmed. The court further acknowledged it was taking into account these were arrests and not convictions, but it emphasized the nature, number, and recentness of the arrests in rendering its decision. It also afforded defendant an opportunity to respond to the past arrests and assessed his response in rendering its conclusion.

Section 290.5 expressly permits the court to consider any reliable, material, and relevant evidence related, in part, to a defendant's criminal and relevant noncriminal behavior after conviction for the registerable offense, the time period during which he had not reoffended, and his current risk of sexual or violent reoffense in determining whether a defendant's continued registration "appreciably increased society's safety." (See 290.5, subd. (b)(3); accord, Evid. Code, § 210 [evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].) Additionally, as discussed, the California Supreme Court has acknowledged the admissibility as well as the relevance and potential value of arrest records in certain postconviction proceedings that involve an assessment of the potential danger an individual poses to public safety. (See *Loder v. Municipal Court*, *supra*, 17 Cal.3d at pp. 866–868.)

And, here, the prosecution produced evidence of undisputed facts—namely, that defendant's arrest record reflected numerous arrests over the course of three decades related to child molestation since his 1986 conviction, including a 2018 arrest— supporting the trial court's conclusion that terminating defendant's registration requirement would considerably raise the threat to society because defendant is currently likely to reoffend. (See generally *People v. Thai*, *supra*, 90 Cal.App.5th at p. 433 [noting it is prosecution's burden to produce evidence establishing terminating registration

10.

requirement considerably raises threat to society because defendant is "currently likely to reoffend"].)  Thus, under the circumstances, we cannot conclude the court's denial of defendant's petition to terminate his registration requirement pursuant to section 290.5 and its imposition of a two-year requirement before defendant can petition again exceeded the bounds of reason.  That is, the court's factual finding that community safety would be significantly enhanced by defendant's continued registration was grounded in the evidence presented at the hearing.

Accordingly, we reject defendant's contention.

## DISPOSITION

The court's order denying defendant's petition is affirmed.


PEÑA, J.

WE CONCUR:


DETJEN, Acting P. J.


SMITH, J.


11.